UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| YIEH PHUI ENTERPRISE CO., LTD. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 26-00746 |
| UNITED STATES, | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

Pursuant to Rule 15(a)(2) of the United States Court of International Trade, Plaintiff Yieh Phui Enterprise Co., Ltd. ("Yieh Phui"), by and through its undersigned counsel, alleges and states, as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1. This is a civil action for relief pursuant to sections 516A(a)(2)(A)(i)(II) and 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, codified as 19 U.S.C. §§ 1516a(a)(2)(A)(i)(II) and 1516a(a)(2)(B)(i).

2. This civil action challenges the final determination of the antidumping investigation of certain corrosion-resistant steel flat products ("CORE") from Taiwan, conducted by the U.S. Department of Commerce ("Commerce"), pursuant to section 731 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1673. The contested final determination was published as <u>Certain Corrosion-Resistant Steel Products from Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value</u>, 90 Fed. Reg. 42210 (Dep't Commerce Aug. 29, 2025), and accompanying Issues and Decision Memorandum ("Final Decision Memo") (collectively, "<u>Final</u>

1

Determination"). The Final Determination was subsequently amended, in part, with respect to the investigation of subject imports from Brazil and Mexico in response to ministerial error allegations submitted by Petitioners Nucor Corporation, Steel Dynamics, Inc., United States Steel Corporation, Wheeling-Nippon Steel, Inc., and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (collectively, "Petitioners"). Based on the allegations submitted with respect Brazil and Mexico, Commerce's final decision covering all subject countries and antidumping duty orders was published as Corrosion-Resistant Steel Products From Brazil and Mexico: Amended Final Antidumping Duty Determination; Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Turkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Antidumping Duty Orders, 90 Fed. Reg. 59494 (Dep't Commerce Dec. 19, 2025) ("AD Order"), which included a 10.85% antidumping duty (AD) margin for Plaintiff Yieh Phui.

3.     Plaintiff seeks relief from this Court: (a) to vacate the Final Determination and the subsequent AD Order, and (b) to remand it to Commerce for further proceedings.

## STANDING OF PLAINTIFF

4.     Plaintiff is a producer and exporter in Taiwan of subject merchandise. Plaintiff actively participated in the contested antidumping duty investigation of Certain Corrosion-Resistant Steel Products from Taiwan (ITA Case No. A-583-878), and as such is an "interested party" within the meaning of sections 516(A)(f)(3) and 771(9)(A) of the Tariff Act of 1930, codified as 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A). Plaintiff therefore has standing to bring this action under 28 U.S.C. § 2631(c).

## JURISDICTION

5. The Court has exclusive jurisdiction over this action under 28 U.S.C. § 1581(c).

## TIMELINESS

6. Plaintiff filed a Summons to initiate this action on January 20, 2026, which is within 30 days after the publication of the AD Order. This Complaint is being filed within 30 days after the date Plaintiff filed the Summons, and thus is timely in accordance with 19 U.S.C. § 1516a(a)(2)(A)(i), 28 U.S.C. § 2636(c), and USCIT Rule 3(a)(2).

## STANDARD OF REVIEW

7. The Court must remand any administrative determination by Commerce which is "unsupported by substantial evidence on the record" as a whole, or is "otherwise not in accordance with the law." 19 U.S.C. § 1516a(b)(1)(B); Koyo Seiko Co. v. United States, 769 F. Supp. 1526, 1528 (Ct. Int'l Trade 1992).

## BACKGROUND

8. On September 25, 2024, Commerce initiated the antidumping duty investigation of certain corrosion resistant steel flat products from Taiwan, among other countries. Certain Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Turkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations, 89 Fed. Reg. 80196 (Dep't Commerce Oct. 2, 2024). On November 29, 2024, Commerce selected Plaintiff Yieh Phui as the sole Taiwanese mandatory respondent to be individually examined. See Memorandum from Fred Baker and Monique Cummings to Scot Fullerton Re: Less-Than-Fair-Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan: Respondent Selection (Dep't Commerce Nov. 29, 2024).

9. In its response to Commerce's initial Sections B-D Questionnaire, Plaintiff timely submitted voluminous, detailed information about its home market and U.S. sales activities in the period of investigation ("POI"), as well as its cost of production ("COP") for that period, in accordance with Commerce's instructions. See generally Yieh Phui Sections B-D Response, Jan. 23, 2025.

10. On February 18, 2025, Petitioners filed comments alleging that a "particular market situation" ("PMS") existed in Taiwan during the POI which distorted the costs of hot-rolled coil ("HRC") in Taiwan such that the costs of production of subject merchandise in Taiwan did not reflect costs of production in the "ordinary course of trade." See Petitioners' Submission Re: Certain Corrosion-Resistant Steel Products from Taiwan: Particular Market Situation Allegation and Supporting Factual Information, Feb. 18. 2025, at 1 & 8-21 ("Petitioners' PMS Allegation"). In support of this cost-based PMS element, Petitioners' PMS Allegation relied upon data involving shipments of HRC from China into Taiwan which covered the POI and which presumably may have impacted Plaintiff's costs of production in that time period. See id. at 8-9 & 14-20. Petitioners' PMS Allegation alleged that, in light of the foregoing circumstances, Taiwanese producers' home market sales of corrosion-resistant steel products ("CORE") (i.e., the subject merchandise) were also outside the "ordinary course of trade," and as such those sales were not an appropriate basis for normal value. Petitioners' PMS Allegation further alleged that the aforementioned circumstances warranted that Commerce resort to constructed value ("CV") for normal value, instead of using Plaintiff's sales prices in the home market, in Plaintiff's dumping margin calculations. See id. at 1-2 & 21. Citing 19 U.S.C. § 1677b(f)(1), Petitioners' PMS Allegation further urged Commerce to determine that because of the PMS, Plaintiff's costs did not reasonably reflect the costs associated with the

4

production and sale of the merchandise and, based on that determination, Commerce should use Plaintiff's costs as adjusted for the PMS in its sales-below-cost test and in calculating constructed values. Petitioners' PMS Allegation argued in the alternative that Commerce should determine that because of the PMS, there cannot be a proper comparison between the home market sales and export price pursuant to §1677b(a)(1)(C)(iii) such that Commerce should use CV, as adjusted to reflect the PMS per the statutory PMS provision of § 1677b(e), as a basis for normal value. See id. at 2.

11. On March 12, 2025, Petitioners submitted pre-preliminary determination comments regarding market distortion issues with respect to the HRC market in Taiwan. See generally Petitioners' Submission Re: Certain Corrosion-Resistant Steel Products from Taiwan: Petitioners' Comments in Advance of Commerce's Preliminary Determination, Mar. 12, 2025 ("Petitioners' Pre-Prelim. Comments"). Petitioners' Pre-Prelim. Comments argued that, even in the absence of an affirmative finding on PMS pursuant to 19 U.S.C. § 1677b(e), Commerce should still adjust Plaintiff's cost of production under 19 U.S.C. § 1677b(f)(1) pursuant to Petitioners' interpretation of the U.S. Court of Appeals for the Federal Circuit's (CAFC) decision in Hyundai Steel Co. v. United States, 19 F.4th 1346, 1355 (Fed. Cir. 2021) ("Hyundai Steel"), because the cost of HRC in Taiwan was distorted due to Taiwan's alleged increased reliance on imports of "unfairly traded" Chinese HRC for use in domestic production. See Petitioners' Pre-Prelim. Comments at 3.

12. On March 13, 2025, Plaintiff timely filed a response to Commerce's first supplemental questionnaire requesting more detailed information about the sales- and cost-related information Plaintiff had previously submitted. This response contained, inter alia, supporting documentation and detailed financial data regarding Plaintiff's reported home market

5

and U.S. sales and costs associated therewith.  See, e.g., Yieh Phui First Supp. Response, Mar. 13, 2025, at Ex. 18-21, 31-A-41-C & 44-47.

13. On March 19, 2025, Commerce released a memorandum which officially accepted Petitioners' PMS Allegation based on the following factors: (1) global excess capacity in steel production; (2) increased imports of HRC at below-market prices; (3) a significant increase in HRC imports from China between 2021-2024, which coincided with a decrease in the average unit price for imported HRC in Taiwan; and (4) the failure of Taiwan to implement trade remedies or other actions to prevent the surge of China HRC imports at distortionary prices.  See Memorandum from Janae Martin to The File Re: Less-Than-Fair-Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan: Acceptance of Cost-Based Particular Market Situation Allegation (Dep't Commerce Mar. 19, 2025), at 1.

14. On March 21, 2025, Plaintiff timely filed a second supplemental questionnaire response which contained supporting documentation and detailed data regarding Plaintiff's indirect exports and third country sales.  See Yieh Phui Second Supp. Response, Mar. 21, 2025, at Ex. 1-4.

15. Also on March 21, 2025, Plaintiff submitted rebuttal comments to the Petitioners' Pre-Prelim. Comments, explaining that the legal basis for Commerce to make upward adjustments to the cost of production should not be grounded in the authority conferred by 19 U.S.C. § 1677b(f)(1), as Petitioners alleged, because that authority is legally distinct from the PMS considerations set forth in 19 U.S.C. § 1677b(e).  See generally Yieh Phui Submission Re: Corrosion-Resistant Steel Products from Taiwan; Rebuttal Comments to Petitioners' Comments in Advance of Preliminary Determination, Mar. 21, 2025 ("Yieh Phui's Pre-Prelim. Comments").  Specifically, Plaintiff argued that the record does not support Petitioners' assertion

of market distortions existing in the Taiwanese HRC market during the POI. In addition, Plaintiff provided detailed explanations with respect to why 19 U.S.C. § 1677b(f)(1) does not provide Commerce with legal authority to adjust Plaintiff's cost of production as alleged by Petitioners based on their interpretation of the CAFC's ruling in Hyundai Steel. See id. at 1-7.

16. On March 25, 2025, Yieh Phui's submitted a first section D supplemental response which contained, inter alia, detailed financial data and supporting documentation with respect to its purchases of HRC and consumption thereof in production of the subject merchandise during the POI. See, e.g., Yieh Phui First Section D Supp. Response, Mar. 25, 2025, at Ex. 3, 7-9, 14-17, 26, 32 & 45.

17. On March 26, 2025, Plaintiff timely submitted comments and factual information to rebut Petitioners' PMS Allegation, in which Plaintiff provided detailed explanations and factual information showing that (1) Petitioners' PMS Allegation failed to provide distinguishable facts and arguments with respect to the HRC market in Taiwan, and thus was inconsistent with Commerce's PMS regulations on this basis; (2) Taiwan's imports of HRC from China or elsewhere were too minimal to have substantial influence on the HRC market prices in Taiwan; and (3) Petitioners' price effect analysis was flawed. See generally Yieh Phui Submission Re: Response to Particular Market Situation Allegation, Mar. 26, 2025.

18. On April 2, 2025, Commerce issued its preliminary decision in the investigation. Certain Corrosion-Resistant Steel Products From Taiwan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures, 90 Fed. Reg. 15359 (Dep't Commerce Apr. 10, 2025) ("Preliminary Determination"). Commerce calculated a 2.64% dumping margin for Plaintiff

7

based on the sales and cost information it had submitted in its various questionnaire responses. See id. at 15360.

19. The Preliminary Determination did not address Petitioners' PMS Allegation, the Petitioners' Pre-Prelim. Comments, or Yieh Phui's Pre-Prelim. Comments.  Commerce did, however, issue a memorandum shortly after the Preliminary Determination which noted that it intended to analyze Petitioners' PMS Allegation and the various responses to it, in post-preliminary decision documents.  See Memorandum from Scott Fullerton to Christopher Abbott Re: Decision Memorandum for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan, Apr. 3, 2025, at 3 ("Prelim. Memo").

20. On April 11, 2025, Plaintiff timely filed a letter pointing out a ministerial error Commerce made in calculating Plaintiff's preliminary dumping margin.  Specifically, Commerce had failed to convert the unit of measure of Plaintiff's cost of production from a per-kilogram basis to a per-metric ton basis.  See generally Yieh Phui Submission Re: Corrosion-Resistant Steel Products from China; Ministerial Error Comments, Apr. 11, 2025 ("Plaintiff's Ministerial Error Comments"). Plaintiff's Ministerial Error Comments explained that Yieh Phui had reported its home market and U.S. sales quantities on a metric ton basis, and its costs on a kilogram basis, consistent with the records it keeps in the normal course of business.  However, Commerce's preliminary margin calculations had not brought those units of measure into harmony with one another.  Thus, Plaintiff's Ministerial Error Comments requested that Commerce correct its margin calculation to reconcile the different units of measure Plaintiff had reported.

21. In response to Plaintiff's Ministerial Error Comments, on April 25, 2025 Commerce issued a letter to Plaintiff which did not deny any error but explained that it would address the alleged error in the final stage of the investigation because Plaintiff had failed to

address the "significance" of the alleged error pursuant to Commerce regulations.  <u>See</u> <u>generally</u> Commerce Letter to Appleton Luff Re: Less-Than-Fair-Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan: Response to Ministerial Error Allegation (Dep't Commerce April 25, 2025) ("Response to Ministerial Error Allegation").

22. In reply to the Response to Ministerial Error Allegation, on April 29, 2025 Plaintiff submitted another letter to Commerce urging it to reconsider correcting the ministerial error identified in Plaintiff's Ministerial Error Comments.  <u>See</u> Yieh Phui Submission Re: Corrosion-Resistant Steel Products from Taiwan: Request to Correct Ministerial Errors in the Preliminary Determination, Apr. 29, 2025, at 2-4 ("Ministerial Error Reconsideration Request"). Plaintiff argued that although its initial request did not address the "significance" of the error alleged, Plaintiff had nonetheless met all of the procedural requirements for such a submission. Plaintiff averred that given Commerce has a duty to calculate dumping margins "as accurately as possible," neither the Statute nor Commerce's regulations prohibit Commerce from conducting a <u>sua</u> <u>sponte</u> analysis in determining the significance of the alleged error, an error which Commerce had not denied.  The error Plaintiff pointed out was simply a matter of Commerce failing to convert units of measure from metric tons to kilograms based on its reported information of sales being kept and reported on a metric ton basis, and cost records being kept and reported on a kilogram basis.  <u>See id</u>.

23. In response to Plaintiff's Ministerial Error Reconsideration Request, on May 5, 2025 Commerce reiterated its decision to defer consideration of the alleged ministerial error to the final phase of the investigation without denying the existence of the alleged error.  <u>See</u> <u>generally</u> Commerce Letter to Appleton Luff Re: Less-Than-Fair-Value Investigation of Certain

9

Corrosion-Resistant Steel Products from Taiwan: Response to Ministerial Error Allegation Reconsideration Request (Dep't Commerce May 5, 2025).

24. In April and May of 2025, Commerce successfully verified Plaintiff's questionnaire responses at both cost and sales verifications conducted on-site in Taiwan. See generally Memorandum from Christopher Winfield to Erin Begnal Re: Verification of the Cost Response of Yieh Phui Enterprise Co., Ltd. in the Less Than Fair Value Investigation of Corrosion-Resistant Steel Products from Taiwan, May 27, 2025; and Memorandum from Preston Cox and Monique Cummings to the File Re: Less-Than-Fair-Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan: Sales Verification Report for Yieh Phui Enterprise Co., Ltd. and Yieh Phui America Inc., June 6, 2025.

25. On June 4, 2025, Plaintiff timely submitted comments and new factual information related to the determination of CV profit and selling expenses pursuant to Commerce's instructions in the event that it found it necessary to rely on CV as the basis for normal value, and Commerce is unable to calculate CV profit and selling expenses using the preferred method under 19 U.S.C. § 1677b(e)(2)(A). See generally Yieh Phui Submission Re: Corrosion-Resistant Steel Products from Taiwan: Submission of New Factual Information and Comments Concerning Constructed Value Profit and Selling Expenses, June 4, 2025. Also on June 4, 2025, Petitioners submitted comments and new factual information related to Plaintiff Yieh Phui's CV profits and selling expenses. See generally Petitioners' Submission Re: Antidumping Duty Investigation of Certain Corrosion-Resistant Steel Products from Taiwan: Petitioners' Comments and Factual Information Concerning CV Profit and Selling Expenses, June 4, 2025 ("Petitioners' CV Profit and Selling Expenses Submission").

26. On June 16, 2025, Plaintiff timely submitted rebuttal comments and factual information in response to Petitioners' CV Profit and Selling Expenses Submission, in which it

provided additional evidence showing that the Chinese imports of HRC during the two fiscal years covering the entire POI were insignificant to distort the Taiwanese market of corrosion-resistant steel products. See Yieh Phui Submission Re: Corrosion-Resistant Steel Products from Taiwan: Rebuttal Comments and Factual Information Concerning Petitioners' CV Profit and Selling Expenses Submission, June 15, 2025, at 3-6 & Ex. 1-1–1-2. That submission also contained factual information pointing out various deficiencies of the CV profits and selling expenses that Petitioners proposed in their CV Profit and Selling Expenses Submission. See id. at 7-17 & Ex. 2-8.

27.     On July 23, 2025, Commerce issued three post-preliminary memoranda reversing course from its decision in the Preliminary Determination, finding that Plaintiff's dumping margin should be calculated in accordance with the finding of a cost- and sales-based PMS. See generally Memorandum From Scot Fullerton to Christopher Abott Re: Post-Preliminary Analysis for the Less-Than-Fair-Value Investigation of Certain Corrosion-Resistant Steel Products from Taiwan, July 23, 2025 ("Post-Prelim. Analysis Memo"); Memorandum from Preston Cox to the File Re: Yieh Phui Enterprise Co., Ltd. Post-Preliminary Sales Analysis Memorandum, July 23, 2025 ("Post-Prelim. Sales Memo"); and Memorandum from Christopher Winfield to Gina Lee Re: Cost of Production and Constructed Value Calculation Adjustments for the Post-Preliminary Determination – Yieh Phui Enterprise Co., Ltd., July 23, 2025 ("Post-Prelim. Cost Memo") (collectively, "Post-Prelim. Determination"). With respect to Petitioners' PMS Allegation, Commerce preliminarily found that both a cost- and sales-based PMS existed in Taiwan during the POI. As a result of this finding, and the consequent decisions to make an upward cost adjustment to Plaintiff's HRC in calculating the cost of production and constructed value, as well

as to exclude all of Plaintiff's home market sales in the dumping margin calculations, Commerce calculated a dumping rate of 10.85% in the Post-Prelim. Determination.

28. With respect to the cost-based PMS, Commerce found that large import volumes of low-priced HRC from China during the POI distorted the domestic price of HRC in Taiwan and, therefore, the production costs of CORE. See Post-Prelim. Analysis Memo at 9. According to Commerce, China's dominance in the global steel industry as the world's largest steel producer is well-documented, and Commerce has previously found China's capacity and production compared to the rest of the world to have a distortive impact on global markets. See id. Commerce further found that while imports of Chinese HRC into Taiwan increased from 2021 through 2024, the average unit price of HRC imports into Taiwan decreased by over 30 percent, and prices for imports of HRC from China in 2023 and 2024 were lower than prices from other countries and the Taiwanese HRC market as a whole. See id. at 10. As such, Commerce found a cost-based PMS existed in Taiwan during the POI such that a circumstance or set of circumstances exists that may have impacted the price of HRC inputs into the production of subject merchandise in accordance with 19 C.F.R. §§ 351.416(d)(1)(i) & 351.416(e). See Post-Prelim. Analysis Memo at 7-11.

29. As a result of its cost-based PMS finding, the Post-Prelim Determination made a substantial upward adjustment to Plaintiff's cost of HRC, a major raw material input for Plaintiff to produce the subject merchandise, in calculating the cost of production and constructed value for purposes of Plaintiff's dumping margin calculations. See Post-Prelim. Cost Memo at 1-3. According to Commerce, this upward adjustment to HRC cost was based on the price difference between the average HRC price paid by Yieh Phui during the POI and the average price for a similar product in the United States and Europe submitted by Petitioners pursuant to a market

intelligence data source known as "World Steel Dynamics *SteelBenchmarker*". See Post-Prelim. Analysis Memo at 14.

30. As to the sales-based PMS issue, Commerce preliminarily found that a PMS existed in Taiwan during the POI with respect to the prices of CORE in Taiwan that prevents or does not permit a proper comparison of sales prices in the home market or third country market with expect prices constructed export prices. See id. at 11-13. According to Commerce, the large import volumes of low-priced HRC from China during the POI affected the Taiwanese market such that the costs of producing CORE do not accurately reflect the COP in the ordinary course of trade. See id. at 12. Commerce also found that the data show how the excess global steel capacity, and resulting imports of low-priced HRC into Taiwan, produces a similar downward price trend on imports of comparatively lower-priced CORE into Taiwan. See id. Commerce concluded that because Plaintiff benefits from lower-priced HRC from China, it is able to decrease, or avoid increasing, its price of CORE and as a result, distortion in the price of HRC as an input distorts the price of CORE in Taiwan's home market. See id. Accordingly, Commerce found that a circumstance or set of circumstances exists that may have particularly impacted the price of CORE in Taiwan's home market, in accordance with 19 C.F.R. §§ 351.416(c) and 351.416(e), because there cannot be a proper comparison of Plaintiff's home market sales of CORE and U.S. sales of CORE. See id. at 13. As a result, Commerce determined that CV should be used as the basis for calculating the normal value instead of Plaintiff's reported home market sales prices. See id.

31. On August 1, 2025, interested parties in the investigation submitted case briefs to Commerce.

32.     Petitioners' case brief made no mention of the decisions Commerce made with respect to PMS issues in its various preliminary and post-preliminary memoranda on the issue, but rather raised data reporting concerns that allegedly could give rise to some form of adverse facts available treatment of Plaintiff.  See generally Petitioners' Submission Re: Certain Corrosion-Resistant Steel Products from Taiwan: Petitioners' Case Brief, Aug. 1, 2025.

33.     Plaintiff's case brief challenged Commerce's preliminary finding of a cost- and sales-based PMS as contrary to law and unsupported by substantial record evidence.  See Yieh Phui Submission to Commerce Re: Corrosion-Resistant Steel Products from Taiwan; Case Brief, Aug. 1, 2025 ("Plaintiff's Case Brief").  Plaintiff's Case Brief presented several arguments in support of its position on the cost-based PMS issue:  (1) although Chinese HRC imports could have contributed to a PMS finding in the investigation, the record did not show sufficient "particularity" for this circumstance to create a PMS on its own; (2) Commerce unreasonably gave greater weight to evidence regarding the price-cutting plan of the largest steelmaker in Taiwan than the weight given to evidence regarding the low penetration level of Chinese imports of HRC, which Plaintiff had thoroughly documented and addressed during the proceeding; and (3) even if Commerce's preliminary finding that China HRC imports did distort the Taiwanese market and in turn Plaintiff's cost of production, substantial record evidence did not establish that such distortion would prevent a proper comparison with the export price or constructed export price with respect to Plaintiff's sales prices.  See Plaintiff's Case Brief at 1 & 8-19.

34.     With respect to Commerce's preliminary sales-based PMS finding, Plaintiff's Case Brief presented several arguments in support of its position.  First, Plaintiff argued that the information it had presented in its prior submissions demonstrated that Chinese imports of HRC did not support Commerce's preliminary finding of a sales-based PMS because (1) the imports of

14

HRC were not "particular" to Taiwan during the POI, (2) Commerce unreasonably gave greater weight on the price cutting plan of the largest steelmaker in Taiwan allegedly to be made in response to the Chinese imports into Taiwan, when the record evidence indicated that the market penetration of Chinese HRC imports was too minimal to have a substantial impact on Taiwan, (3) there was no record evidence to support a finding that such market distortions would prevent a proper comparison of Plaintiff's home market prices with its U.S. sales, and (4) Commerce had acted inconsistently with prior practice in its sales-based PMS determination.  Second, Plaintiff argued that imports of CORE from China into Taiwan during the POI, another factor that Commerce relied on in its preliminary finding of a sales-based PMS, is contrary to law and unsupported by substantial record evidence, because (1) Commerce provided no explanation or analysis on how the imports of CORE into Taiwan were "particular" to Taiwan, and (2) Commerce unreasonably gave greater weight on the price cutting plan made by a major steelmaker in Taiwan than the low penetration level of Chinese imports of CORE products.

35. Plaintiff's Case Brief also presented arguments with respect to the data source relied upon by Commerce in calculating the upward HRC cost adjustment.  Plaintiff provided explanation and pointed to record evidence that the data source (i.e., World Steel Dynamics *SteelBenchmarker*) Commerce relied on in reaching the cost adjustment to HRC does not represent the best available data source on record.  Plaintiff's Case Brief argued instead that the Taipei Times news article Commerce heavily relied upon in reaching its finding of the existence market distortion for HRC in Taiwan should also serve as the best data source in quantifying the cost-based PMS adjustment related to HRC.  See Plaintiff's Case Brief at 27-29.  In accordance with the Taipei Times news article, Plaintiff urged Commerce to reach a more reasonable and lower percentage of cost adjustment to Plaintiff's HRC cost.  See id.

15

36. In the Final Determination, Commerce ultimately rejected Plaintiff's claims and reasoning on both the cost- and sales-based PMS issues, and instead continued to find the existence of a cost- and sales-based PMS in Taiwan during the POI. See Final Decision Memo at 8-18. Commerce also rejected Plaintiff's argument of using another data source on the record (i.e., the Taipei Times news article) in calculating the cost adjustment to Plaintiff's HRC cost as a result of the cost-based PMS finding. See id. at 18-21. All in all, Commerce's reasoning in the Final Determination with respect to finding that a cost- and sales-based PMS existed in Taiwan during the POI largely mirrored the reasoning set forth in the Post-Prelim. Determination. See id.

## STATEMENT OF CLAIMS

### Count One

37. Paragraphs 1 through 36 are adopted and incorporated herein by reference.

38. Commerce's decision regarding a cost-based PMS finding as regards Plaintiff in the Final Determination is unsupported by substantial evidence and is otherwise unsupported by law.

### Count Two

39. Paragraphs 1 through 38 are adopted and incorporated herein by reference.

40. Commerce's decision regarding a sales-based PMS finding as regards Plaintiff in the Final Determination is unsupported by substantial evidence and is otherwise unsupported by law.

### Count Three

41. Paragraphs 1 to 40 are adopted and incorporated herein by reference.

42. Commerce's decision regarding the data source used in making the cost-based PMS adjustment as regards Plaintiff in the Final Determination is unsupported by substantial evidence and is otherwise unsupported by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to:

(1) Hold that the Final Determination is not in accordance with law or unsupported by substantial evidence with respect the claims advanced by Plaintiff in this Complaint;

(2) Remand the Final Determination to Commerce for redetermination consistent with the opinion of this Court; and

(3) Grant such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Kelly A. Slater
Kelly A. Slater, Esq.
Edmund W. Sim, Esq.
Jay Y. Nee, Esq.
APPLETON LUFF PTE LTD
1025 Connecticut Avenue, NW
Suite 1000
Washington, DC 20036
(301) 649-2149

Counsel to Yieh Phui Industrial Co., Ltd.

Dated: February 19, 2026