# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| YIEH PHUI ENTERPRISE CO., LTD., <br><br> Plaintiff, <br><br> STEEL DYNAMICS, INC. AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> Consolidated Plaintiffs, <br><br> and <br><br> NUCOR CORPORATION AND UNITED STATES STEEL CORPORATION, <br><br> Consolidated Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> STEEL DYNAMICS, INC.; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; UNITED STATES STEEL CORPORATION; NUCOR CORPORATION; AND YIEH PHUI ENTERPRISE CO., LTD., <br><br> Consolidated Defendant-Intervenors. | **PUBLIC VERSION** <br><br> Consol. Ct. No. 26-00746 <br><br> Business Proprietary Information Removed from Single Brackets [ ] |

## CONSOLIDATED PLAINTIFFS AND CONSOLIDATED PLAINTIFF-INTERVENORS' MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of the Court, Consolidated Plaintiffs Steel Dynamics, Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC and Consolidated Plaintiff-Intervenors Nucor Corporation and United States Steel Corporation hereby move for judgment on the agency record in their appeal of the final determination issued by the U.S. Department of Commerce ("Commerce") in the antidumping investigation of certain corrosion-resistant steel products from Taiwan. *See Certain Corrosion-Resistant Steel Products From Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 42,210 (Dep't Commerce Aug. 29, 2025) ("*Final Determination*").   As demonstrated in the accompanying memorandum in support of this motion, certain aspects of Commerce's *Final Determination* are unsupported by substantial evidence and otherwise not in accordance with law.

Therefore, Consolidated Plaintiffs and Consolidated Plaintiff-Intervenors respectfully request that the Court grant this motion for judgment on the agency record, remand this matter to Commerce for disposition consistent with the order and opinion of the Court, and order any additional relief that the Court may deem just and proper.

Respectfully submitted,

/s/ Roger B. Schagrin
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
William A. Fennell, Esq.
Alessandra A. Palazzolo, Esq.

/s/ Alan H. Price
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
John Allen Riggins, Esq.

/s/ Thomas M. Beline
Thomas M. Beline, Esq.
Myles S. Getlan, Esq.
Nicole Brunda, Esq.
Angelica L. Townshend, *Director of Economic Analysis*
Matthew P. Berrigan, *Trade Accountant*

**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Washington, D.C. 20001
(202) 223-1700

*Counsel to Steel Dynamics, Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

**WILEY REIN LLP**
2050 M Street, NW
Washington, D.C. 20036
(202) 719-7000

*Counsel to Nucor Corporation*

**CASSIDY LEVY KENT (USA) LLP**
2112 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 567-2300

*Counsel to United States Steel Corporation*

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN**

| | |
|---|---|
| YIEH PHUI ENTERPRISE CO., LTD., | |
| Plaintiff, | |
| | |
| STEEL DYNAMICS, INC. AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | **CONFIDENTIAL VERSION** |
| Consolidated Plaintiffs, | Consol. Ct. No. 26-00746 |
| and | Business Proprietary Information Identified by Single Brackets [ ] |
| NUCOR CORPORATION AND UNITED STATES STEEL CORPORATION, | |
| Consolidated Plaintiff-Intervenors, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| STEEL DYNAMICS, INC.; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; UNITED STATES STEEL CORPORATION; NUCOR CORPORATION; AND YIEH PHUI ENTERPRISE CO., LTD. | |
| Consolidated Defendant-Intervenors. | |

**CONSOLIDATED PLAINTIFFS AND CONSOLIDATED PLAINTIFF-INTERVENORS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD**

/s/ Roger B. Schagrin
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
William A. Fennell, Esq.
Alessandra A. Palazzolo, Esq.

/s/ Alan H. Price
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
John Allen Riggins, Esq.

/s/ Thomas M. Beline
Thomas M. Beline, Esq.
Myles S. Getlan, Esq.
Nicole Brunda, Esq.
Angelica L. Townshend, *Director of Economic Analysis*
Matthew P. Berrigan, *Trade Accountant*

**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Washington, D.C. 20001
(202) 223-1700

*Counsel to Steel Dynamics, Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

**WILEY REIN LLP**
2050 M Street, NW
Washington, D.C. 20036
(202) 719-7000

*Counsel to Nucor Corporation*

**CASSIDY LEVY KENT (USA) LLP**
2112 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 567-2300

*Counsel to United States Steel Corporation*

July 21, 2026

TABLE OF CONTENTS

I.    STATEMENT PURSUANT TO RULE 56.2 ................................................................. 1

      A.    Administrative Determination Under Review ............................................. 1

      B.    Issues Presented for Review ....................................................................... 2

II.   STANDARD OF REVIEW ....................................................................................... 2

STATEMENT OF FACTS ..................................................................................................... 4

III.  SUMMARY OF ARGUMENT .................................................................................. 14

IV.   ARGUMENT ........................................................................................................... 15

      A.    Commerce Failed to Meet its Obligations under 19 U.S.C. § 1677f(i)(3) ............... 15

      B.    The Failure of Commerce to Consider the Full Scope and Implications of the
            Inaccuracies in Yieh Phui's Cost Reporting Rendered its Determination
            Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law
             17

      C.    Commerce Erred in Relying on Objections to the Analysis of Yieh Phui's Reported
            Costs that Had No Bearing on the Analysis or the Inaccuracies in Yieh Phui's Costs.
             19

      D.    Commerce Should Have Rejected Yieh Phui's Cost Information ........................... 23

V.    CONCLUSION ....................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States,* 802 F.3d 1339 (Fed. Cir. 2015) .............. 18

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938) ................................................ 2

*FCC v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293 (2003) ...................................... 3

*FCC v. NextWave Pers. Commc'ns, Inc.,* 537 U.S. 293, 300 (2003) .............................. 3

*Huvis Corp. v. United States*, 525 F. Supp. 2d 1370 (Ct. Int'l Trade 2007) .................. 3

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)......................................... 3

*Micron Tech. v. United States*, 117 F.3d 1386 (Fed. Cir. 1997) .................................... 18

*Monsanto Co. v. United States,* 698 F.Supp. 275 (1988) ............................................... 18

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .................................................................................................................... 3

*Mukand Ltd. v. United State*s, 767 F.3d 1300 (Fed. Cir. 2014)...................................... 23

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ........................... 2

*Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006) ........... 2

*Tianjin Magnesium Int'l Co. v. United States*, 34 CIT 980, 722 F.Supp.2d 1322 (2010) ............... 3

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i)........................................................................................ 2

19 U.S.C. § 1677f(i)(3) ............................................................................................. 2, 15

19 U.SC § 1677b(f)(1)(A).............................................................................................. 21

**Administrative Determinations**

*Certain Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 80,196 (Dep't Commerce Oct. 2, 2024)................................................... 4

*Certain Corrosion-Resistant Steel Products From Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 42,210 (Dep't Commerce Aug. 29, 2025)........ 1, 6

ii

*Certain Corrosion-Resistant Steel Products From Taiwan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 90 Fed. Reg. 15,359 (Dep't Commerce April 10, 2025) ... 4

*Issues and Decision Memorandum for the Final Affirmative Determination of Sales at Less-Than-Fair-Value of Corrosion-Resistant Steel Products from Taiwan* (Dep't Commerce Aug. 25, 2025).................................................................................................................. 1, 6

Consolidated Plaintiffs Steel Dynamics, Inc. ("SDI") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW") and Consolidated Plaintiff-Intervenors Nucor Corporation ("Nucor") and United States Steel Corporation ("U.S. Steel") (collectively, "Consolidated Plaintiffs")[1] submit the following memorandum in support of their motion for judgment on the agency record in the above-captioned action.

## I.    STATEMENT PURSUANT TO RULE 56.2

### A.    Administrative Determination Under Review

Consolidated Plaintiffs seek judicial review of certain aspects of the final affirmative antidumping duty ("AD") determination in the investigation of corrosion-resistant steel products ("CORE") from Taiwan. The final determination was published by the U.S. Department of Commerce ("Commerce") in the Federal Register as *Certain Corrosion-Resistant Steel Products From Taiwan: Final Affirmative Determination of Sales at Less Than Fair Value*, 90 Fed. Reg. 42,210 (Dep't Commerce Aug. 29, 2025) ("*CORE Taiwan Final Determination*"), P.R. 336. The findings and conclusions of the contested determination are set forth in the accompanying *Issues and Decision Memorandum for the Final Affirmative Determination of Sales at Less-Than-Fair-Value of Corrosion-Resistant Steel Products from Taiwan* (Dep't Commerce Aug. 25, 2025) ("*IDM*"), P.R. 323.[2]

---

[1]    Both the Consolidated Plaintiffs SDI and the USW and the Consolidated Plaintiff-Intervenors Nucor and U.S. Steel were Petitioners in the investigation below.

[2]    Citations to the public record documents are designated as "P.R."  Citations to the confidential record documents containing business proprietary information are designated as "C.R."

**B.     Issues Presented for Review**

1. Whether Commerce failed to meet its obligations under 19 U.S.C. § 1677f(i)(3) by failing to address evidence in Consolidated Plaintiffs' case brief demonstrating that Taiwanese CORE producer Yieh Phui Enterprise Co., Ltd. ("Yieh Phui") had not accurately reported the physical characteristics or costs of its products.

2. Whether Commerce's treatment of the inaccuracies in Yieh Phui's reporting as applicable only to the products identified was not supported by substantial evidence and was otherwise not in accordance with law.

3. Whether Commerce's rejection of Consolidated Plaintiffs' analysis of Yieh Phui's cost information based on irrelevant facts was not supported by substantial evidence and was otherwise not in accordance with law.

4. Whether Commerce's acceptance of Yieh Phui's cost information as accurate was not supported by substantial evidence and was otherwise not in accordance with law.

## II.     <u>STANDARD OF REVIEW</u>

This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1673d to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

Substantial evidence has been defined as "more than a mere scintilla" and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard requires the Court to assess whether the administrative determination under review is reasonable given the record as a whole. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1350–51 (Fed. Cir.

2006). The standard also requires Commerce to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tianjin Magnesium Int'l Co. v. United States*, 34 CIT 980, 982, 722 F. Supp. 2d 1322, 1328 (2010) (*quoting Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Commerce's determination is in accordance with law if it has met all constitutional, statutory, regulatory, and procedural requirements. *See Huvis Corp. v. United States*, 525 F. Supp. 2d 1370, 1374 (Ct. Int'l Trade 2007) (*citing FCC v. NextWave Pers. Commc'ns, Inc.*, 537 U.S. 293, 300 (2003)).

When determining whether Commerce's interpretation and application of a statute is in accordance with law, the Court is guided by the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ("*Loper Bright*"). In *Loper Bright*, the Supreme Court established a new standard by which courts resolve questions of statutory interpretation when reviewing challenges to agency action. *Loper Bright* held that courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous," *id.* at 413, and rejected the "presum{ption} that statutory ambiguities are implicit delegations to agencies," *id.* at 399. Although the agency's interpretation of the statute may be accorded "due respect," *id.* at 394-95, ultimately courts must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority," *id.* at 412. The "best reading of the statute" is "the reading the court would have reached if no agency were involved." *Id.* at 400 (internal quotations omitted).

3

III.    **STATEMENT OF FACTS**

On September 5, 2024, Consolidated Plaintiffs filed a petition alleging that Taiwanese producers were selling CORE in the United States at less than fair value. Commerce initiated its antidumping duty investigation of CORE from Taiwan on October 2, 2024. *Certain Corrosion-Resistant Steel Products From Australia, Brazil, Canada, Mexico, the Netherlands, South Africa, Taiwan, the Republic of Türkiye, the United Arab Emirates, and the Socialist Republic of Vietnam: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 80,196 (Dep't Commerce Oct. 2, 2024), P.R. 43.

On April 10, 2025, Commerce published its preliminary determination in the investigation. In its preliminary determination, Commerce made an affirmative determination of sales at less than fair value, assigning dumping margins of 2.64% to Yieh Phui, 67.90% to Sheng Yu Steel Co. Ltd., Kounan Steel Co. Ltd., and Meglobe Co. Ltd., and 2.64% to all other producers and exporters. *Certain Corrosion-Resistant Steel Products From Taiwan: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 90 Fed. Reg. 15,359 (Dep't Commerce April 10, 2025), P.R. 227.

Commerce conducted a verification of Yieh Phui's cost questionnaires and data in Taiwan from April 14-17, 2025. Commerce Verification Agenda (Apr. 8, 2025), P.R. 225. Yieh Phui filed its cost verification exhibits with Commerce on April 21, 2025. Yieh Phui Cost Verification Exhibits ("*Verif. Exhibits*"), P.R. 231. Relying in part on Yieh Phui's cost verification exhibits, Consolidated Plaintiffs filed comments on May 23, 2025 that demonstrated that Yieh Phui's reported cost data were not accurate. Petitioners' Comments on Yieh Phui's Cost Reporting and New Factual Information (May 23, 2025) ("*Comments on Yieh Phui's Cost Reporting*"), P.R.

255, C.R. 206.  Commerce issued its cost verification report for Yieh Phui on May 27, 2025.

Cost Verification Report, P.R. 256.

On June 13, 2025, Commerce issued a letter which stated, *inter alia*, that it considered

the issues raised by Consolidated Plaintiffs regarding Yieh Phui's costs to constitute "written

argument" and encouraged Consolidated Plaintiffs to raise the issues in their case brief.

Response to Comments re: NFI (June 13,2025), P.R. 286.  Commerce did not pursue the issue by

requesting any additional information from Yieh Phui.

On July 23, 2025, Commerce issued a post-preliminary determination for Yieh Phui.

Cost of Production and Constructed Value Calculation Adjustments for the Post-Preliminary

Determination – Yieh Phui Enterprise Co., Ltd. (July 23, 2025), P.R. 301.  This post-preliminary

determination modified the preliminary determination by (1) using a revised differential pricing

analysis and (2) making adjustments to the preliminary determination to reflect a particular

market situation in Taiwan.  *Id.*  As a result, Commerce revised the dumping margin that it

calculated for Yieh Phui and the all-others rate from 2.64% to 10.85%.  *Id.*

Consolidated Plaintiffs filed a case brief on August 1, 2025 in which they repeated the

arguments made in the May 23, 2025 filing, showing that Yieh Phui's cost verification exhibits

demonstrated that it had failed to report accurate costs or the correct sales control numbers

("CONNUMs") for a certain number of its sales.  Petitioners' Case Brief at 4-7 (Aug. 1, 2026)

("*Pet. Case Brief*"), P.R. 314, C.R. 217.  The case brief also provided additional analysis

demonstrating that Yieh Phui's cost reporting was not accurate.  *Id.* at 7-18.  Consolidated

Plaintiffs analyzed certain key physical characteristics reported by Yieh Phui for its products to

show that the company's  costs could not be accurate because they were based on inaccurate

product information.  *Id.*  As Consolidated Plaintiffs explained, this failure prevented Commerce

from calculating an accurate dumping margin for Yieh Phui because the agency did not have accurate costs for Yieh Phui's subject merchandise. *Id.* Consolidated Plaintiffs argued that because Yieh Phui had not provided accurate and reliable information on critical elements of its costs, it failed to cooperate to the best of its ability, and Commerce should apply total adverse facts available ("AFA") to determine Yieh Phui's dumping margin. *Id.* at 17.

Thereafter, Commerce issued its final affirmative determination of sales at less than fair value. In its final determination, Commerce calculated the same dumping margins that it had calculated in its post-preliminary determination: 10.85% for Yieh Phui, 67.90% for Sheng Yu Steel Co. Ltd., Kounan Steel Co. Ltd., and Meglobe Co. Ltd., and 10.85% for all others. *CORE Taiwan Final Determination,* 90 Fed. Reg. at 42,211.

In the cost data that it reported to Commerce in the investigation, Yieh Phui allocated steel coil consumption over actual production quantities. *IDM* at 4, P.R. 323. Yieh Phui is not an integrated steel producer, and it therefore purchases steel coils which it then processes to produce CORE. *Id.* Yieh Phui included an exhibit in its response to Section D of Commerce's antidumping duty questionnaire that showed the allocation of total steel coil costs to specific products for the period of investigation ("POI") based on input quantity as measured by weight.[3] Yieh Phui Corrosion-Resistant Steel Products from Taiwan; Sections B-D and Appendix V at Exhibit D-13 (Jan. 23, 2025) ("*Sec. B-D Response*"), P.R. 153, C.R. 94. Thus, a final product

---

[3] In this regard, the production weights reported by Yieh Phui for all of its products were [        ] to the weights of the input steel coils. *See* Yieh Phui Corrosion-Resistant Steel Products from Taiwan; Sections B-D and Appendix V at Exhibit D-13 (Jan. 23, 2025), P.R. 153, C.R. 94.

that weighed 100 kilograms was allocated double the steel input costs that were allocated to a 50 kilogram product.

Yieh Phui allocated its costs as follows: (1) coating costs were allocated by product coating mass,[4] width, and length; (2) paint costs were allocated by paint volume, density, width, and length; (3) labor costs were allocated by coil input weights and processing time; (4) variable and fixed overhead costs were allocated based on coil input weights and processing time; and (5) general and administrative costs and interest costs were allocated based on the cost of manufacturing which incorporated all of the other costs. *Id.* at Exhibits D-16 and D-17, P.R. 153, C.R. 97, 98. This meant that input coil weights (and thus, product weights) and the physical characteristics of the product were critical to Yieh Phui's cost allocations. If the weight assigned to a particular product was incorrect, then the allocation of coil costs to that product were also inaccurate, as was any calculation of the dumping margin relying on those costs. Moreover, because coating and paint costs were allocated, *inter alia*, by width and length, the accuracy of those dimensions was also critical to the allocation of such costs as well as the characteristics that comprised a product's CONNUM.

As noted above, Yieh Phui filed cost verification exhibits with Commerce on April 21, 2025. *Verif. Exhibits*, P.R. 231. After analyzing the cost verification exhibits, Consolidated Plaintiffs submitted comments demonstrating that Yieh Phui's cost reporting was not accurate on

---

[4]  Note that coating mass as used in this brief is to be distinguished from theoretical coating weight. Coating mass as used in the investigation was a measure of the weight of coating material expressed as an ounces per square foot rate while theoretical coating weight was the actual weight of the coating for a specific product. In the field CWEIGHTU, as part of the CONNUM, Yieh Phui had to report the coating mass for the coating used for its products. *See Sec. B-D Response* at 55, P.R. 153.

May 23, 2026, three months before Commerce issued its final determination on August 29, 2025. *Comments on Yieh Phui's Cost Reporting,* P.R. 255, C.R. 206.

Some basic facts are critical to the analysis of Yieh Phui's CONNUM and cost reporting. First, because density is a ratio of weight to volume, the reported weight of a steel product can be converted to its volume by dividing the weight of the steel by its density. *See Comments on Yieh Phui's Cost Reporting* at Exhibit 1, P.R. 255, C.R. 206. The volume of a product can also be determined by multiplying its dimensions (length x width x thickness). This means that each of these dimensions can also be calculated by dividing the volume by the other two dimensions. In fact, because a steel product's weight can be converted to volume, if any three of these four characteristics (*i.e.*, length, width, thickness, and weight) are known, the fourth can also be calculated.

Based on the model match criteria established by Commerce in this investigation, each CONNUM reported by Yieh Phui included codes for ranges of product thicknesses (CTHICKU) and coating weights (CWEIGHTU). *Sec. B-D Response* at 51-58, P.R. 153, C.R. 43.  Yieh Phui included in its verification exhibits [

]. *Verif. Exhibits* at PDF pages 215, 217, 218, 221, 233, 237, 238, 242, 243, P.R. 231, C.R.184.   For some of these products, Yieh Phui's cost verification exhibits included [

]. *Id.* at PDF page 217. In a second worksheet, Yieh Phui [

]. *Id.* at PDF page 218. The second

worksheet for these products included actual values for the three product dimensions (*i.e.*, length, width, and thickness).  The verification exhibits provided the specific dimensions for each of the products for the first time in the investigation.

As noted above, if three of the four elements *(i.e.*, length, width, thickness, and weight) are known, it is possible to calculate the fourth element. For example, if you have the length, width, and weight of a CORE product, you can also compute its thickness. Using the data reported by Yieh Phui, Consolidated Plaintiffs built models that allowed the calculation of any of the four elements if the other three elements were known. *Comments on Yieh Phui's Cost Reporting* at 3*,* P.R. 255, C.R. 206.

Consolidated Plaintiffs analyzed six different products that appeared in Yieh Phui's verification exhibits using these models.  The verification exhibits included [

].  Using the methodology described above, Consolidated Plaintiffs calculated the [

].  *Id*. at 4. The model showed that [

].  *Id.*

Consolidated Plaintiffs computed the volumes for the other five products first by converting their weights to volume and [                                                      ].  *Comments on Yieh Phui's Cost Reporting* at 5, P.R. 255, C.R. 206.  [

9

]. The comparisons of the calculated volumes are shown in the table below.

| [ | | | | | ] |
|---|---|---|---|---|---|
| [ | | | | | ] |
| [ | | | | | ] |
| [ | | | | | ] |
| [ | | | | | ] |
| [ | | | | | ] |

The [          ] volumes calculated for these products meant that at least one of the measurements reported for the product (weight, width, thickness, or length) was [          ]. As explained above, given Yieh Phui's chosen cost allocation methodology, if any one of the measurements that Yieh Phui reported for its products was not accurate, the costs that it reported would also not be accurate.  The table below explains the inaccuracies that result.

| Inaccurate Measurement | Resulting Cost or Model Match Inaccuracy |
|---|---|
| Weight | Cost allocations of materials, labor, and overhead will be inaccurate. |
| Width | Coating weights will be inaccurate, and cost allocations will therefore be inaccurate. In addition, CWIDTHU values will be inaccurate and cause model matching for dumping comparisons to be incorrect. |
| Length | Coating weights will be inaccurate, and cost allocations will therefore be inaccurate. |
| Thickness | CTHICKU values will not be accurate and cause model matching for dumping comparisons to be incorrect. |

While the differences in [                              ] made it clear that Yieh Phui had reported at least one inaccurate measurement, they did not provide sufficient

10

information to discern which measurement had been reported inaccurately.  To demonstrate the specific significance of any one of these being inaccurate, Consolidated Plaintiffs used each different set of three of the four measurements to estimate the fourth. *Comments on Yieh Phui's Cost Reporting* at 5, P.R. 255, C.R. 206. By showing for each product the effect of the inaccuracy in the reporting of one of its measurements, these calculations demonstrated the minimum extent of inaccuracy in Yieh Phui's reporting.

Consolidated Plaintiffs calculated the weight of each of the five products using the three physical dimensions (*i.e.*, length, width, and thickness) reported by Yieh Phui.  *Id*. at 5 and Exhibit 6.  The [                                        ] to those determined for the volumes of the five products as shown in the table above. *Id.* at Exhibit 6.

Additionally, Consolidated Plaintiffs calculated each one of the three physical dimensions (*i.e.* length, width, and thickness) using the other two dimensions and the product weight as reported by Yieh Phui.  *Id*. at 6-7 and Exhibits 7-9.  As shown in the table below, the calculated values [

                   ].

| [ | | ] |
|---|---|---|
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |
| [ | | ] |

In sum, as Consolidated Plaintiffs established in their *Comments on Yieh Phui's Cost Reporting,* information in Yieh Phui's cost verification exhibits demonstrated that for six

11

products sampled during verification, Yieh Phui had not reported accurate information. This alone warranted the rejection of Yieh Phui's cost reporting.

In their case brief filed on August 1, 2025, Consolidated Plaintiffs incorporated their analysis in the *Comments on Yieh Phui's Cost Reporting* and supplemented it with an analysis of additional products that identified more problems. *Pet. Case Brief* at 4-18, P.R. 314, C.R. 217. This further analysis was limited because Yieh Phui did not report the ***actual*** length, width, thickness, or metallic coating weight for all of its products. However, Commerce did require Yieh Phui to report codes corresponding to the ranges for three of these four measurements (width, thickness, and metallic coating weight) as part of the CONNUMs that it reported. *See Sec. B-D Response* at 55 (CWEIGHTU), 57 (CTHICKU), and 58 (CWIDTHU), P.R. 151. For example, a CONNUM with a CTHICKU code reported as "018" should have had a nominal thickness between 0.018 and 0.022 inches. *Id.* at 57. The CONNUM codes therefore established a range of minimum and maximum values for each of the measurements. For the reported CONNUM to be accurate, the actual measurements must have fallen within the ranges established by the applicable code.

Using the range of values for width, thickness, and metallic coating weight incorporated in each reported CONNUM, along with additional information on the record, Consolidated Plaintiffs identified additional CONNUMs that were incorrect which further confirmed that Yieh Phui's CONNUM and cost reporting were not accurate. *Pet. Case Brief* at 7-18, P.R. 314, C.R. 217. Product volumes were determined using low and high values for width and thickness together with lengths calculated based on width, thickness, and coating mass. *Id.* Consolidated Plaintiffs thus were able to compare volumes based on the reported product weight to volumes based on the product measurements and identify any product for which these two volumes were

significantly different.  *Id.*  Any such difference, of course, demonstrated an error either in the product weights or the product measurements reported by Yieh Phui.

This analysis identified CONNUMs for which the measurement-based volume was [                                                                    ]. Specifically, it identified [



                                ]. *See id.* at Exhibit 5, pp. 128 and 142.  This, in turn, meant that either the product weights or at least one of the product dimensions reported by Yieh Phui were inaccurate.

As explained *supra* Yieh Phui allocated a portion of the total cost of steel coils, coatings, labor, variable overhead, and fixed overhead to each product based on the product's physical characteristics and input steel coil quantities.  *Sec. B-D Response* at Exhibit D-13, P.R. 153, C.R. 94. Under Yieh Phui's approach, if the physical characteristics and/or steel coil quantities for a product were not correct, the costs allocated to that product would be inaccurate.  This, in turn, means that inaccurate costs would be allocated to other products.  If the product with the incorrect characteristics had an over-allocation of costs, then there would necessarily be an under-allocation of costs to the other products, and vice-versa.  *Pet. Case Brief* at 14, P.R. 314.

Despite these demonstrable inaccuracies, in its final determination Commerce nevertheless relied on Yieh Phui's cost reporting. *IDM* at 4, P.R. 323.  In rejecting Consolidated Plaintiffs' arguments, Commerce appeared to believe that the only inaccuracy identified by Consolidated Plaintiffs was in theoretical coating weights.  *Id.* at 5.  Commerce also found that the quantity of CONNUMs that had been identified as problematic was very small.  *Id.*

13

Furthermore, Commerce concluded that Consolidated Plaintiffs' analysis was flawed because it relied on inaccurate product thicknesses and relied on theoretical coating and paint weights rather than actual weights. *Id.*

The U.S. International Trade Commission issued its final affirmative determination of material injury on September 25, 2025, and Commerce issued the antidumping duty order on December 16, 2025. This appeal followed.

## IV.    SUMMARY OF ARGUMENT

In its final determination in the investigation of CORE from Taiwan, Commerce ignored factual information demonstrating that Yieh Phui had misreported one or more of the physical characteristics of the products it sold and, as a result, misreported its costs. In turn, Yieh Phui's misreporting of its product characteristics and costs rendered Commerce's dumping margin calculations wholly inaccurate. Rather than address these inaccuracies Commerce mischaracterized them and focused on irrelevant issues. Commerce acted contrary to law by not addressing Consolidated Plaintiffs' demonstration of Yieh Phui's misreported costs. In addition, Commerce's determination was not supported by substantial evidence because it incorrectly found that Consolidated Plaintiffs' demonstration of Yieh Phui's inaccurate reporting (1) implicated only a small portion of Yieh Phui's products and (2) depended on factors, including product thicknesses and theoretical weights, that did not have a significant effect on Consolidated Plaintiffs' analysis. Commerce erred in accepting Yieh Phui's fundamentally flawed product characteristics and cost data and thus not applying AFA.

14

## V.    ARGUMENT

### A.    Commerce Failed to Meet its Obligations under 19 U.S.C. § 1677f(i)(3)

In their submissions to Commerce in the investigation, Consolidated Plaintiffs demonstrated in two different ways that Yieh Phui had misallocated its costs and prevented an accurate calculation of its dumping margin. For six products identified in Yieh Phui's cost verification exhibits, Consolidated Plaintiffs demonstrated that at least one of the physical characteristics reported by Yieh Phui was necessarily inaccurate, meaning that the reported production quantity and steel consumption was also inaccurate. Consolidated Plaintiffs also demonstrated that for [  ] different CONNUMs, Yieh Phui reported production quantities (and consequently steel consumption) that were greater than the quantities determined by their product dimensions. The over-allocation of steel costs to these [  ] products necessarily meant that the steel costs allocated to other products were under-allocated.

In its *IDM*, Commerce ignored evidence of Yieh Phui's erroneous steel cost allocations and instead focused only on theoretical coating weights. Commerce addressed Consolidated Plaintiffs' analysis as if it only addressed theoretical coating weights and ignored their demonstration of inaccurate physical characteristics. Specifically, Commerce began by noting "{a}s an initial matter" that the largest part of CORE costs was allocated over actual quantities and did "not involve the use of theoretical coating weights." *IDM* at 5, P.R. 323. Commerce then explained why Yieh Phui's method for reporting theoretical coating weights was acceptable, and noted that Yieh Phui had identified two flaws in Consolidated Plaintiffs' models for "alleging that the theoretical coating weights are incorrect." *Id.* Commerce concluded by disagreeing with "the petitioners' argument that the use of theoretical coating weights could impact the inaccuracy of matching the reported costs of production to appropriate sales prices." *Id.*

15

In its analysis, Commerce failed to address the fact that Yieh Phui's reporting of inaccurate physical characteristics would necessarily result in the misallocation of costs and prevent an accurate calculation of the company's dumping margin. Commerce had a statutory obligation to address the cost issues that Consolidated Plaintiffs raised during the investigation. Indeed, the statute makes clear that "the administering authority shall include in a final determination an explanation of the basis for its determination that addresses relevant arguments, made by interested parties who are parties to the investigation or review (as the case may be), concerning the establishment of dumping or a countervailable subsidy, or the suspension of the investigation, with respect to which the determination is made." 19 U.S.C. § 1677f(i)(3).

The Court of Appeals for the Federal Circuit ("Federal Circuit") has explained that 19 U.S.C. § 1677f(i)(3) was "designed to codify the preexisting law regarding the requirements of public notice and explanation of agency decisions." *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (2005). It went on to explain that the "leading decision on the subject at the time and today . . . was and is *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29 . . . (1983)." *Id.* In *State Farm*, the Supreme Court recognized that an agency decision is arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider, *entirely failed to consider an important aspect of the problem,* offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *State Farm,* 463 U.S. at 43 (emphasis added).

Commerce must therefore show that it has considered key arguments presented to it by an interested party and that it has provided an adequate explanation for its determination. In making a determination, "it is well settled that an agency must explain its action with sufficient clarity to

16

permit 'effective judicial review.'" *Timken U.S. Corp.*, 421 F.3d at 1355, *citing Camp v. Pitts,* 411 U.S. 138, 142-43 (1973).  As the Federal Circuit has concluded, "{f}ailure to provide the necessary clarity for judicial review requires the agency action be vacated."  *Timken U.S. Corp.*, 421 F.3d at 1355, *citing Camp*, 411 U.S. at 143.

Based on the record here, this Court cannot discern what Commerce thought about the issues and arguments raised by Consolidated Plaintiffs regarding the inaccuracies in Yieh Phui's reporting of its product characteristics and cost data because Commerce did not address those issues and arguments.   By focusing on theoretical coating weights and ignoring Yieh Phui's misallocated and flawed product costs, Commerce "entirely failed to consider an important aspect of the problem" under *State Farm* and, as a result, failed to comply with the requirements of 19 U.S.C. § 1677f(i)(3). Its decision is contrary to law, and the Court should therefore remand this case to Commerce with instructions that it address the issues with Yieh Phui's product characteristics and cost reporting.

B.      The Failure of Commerce to Consider the Full Scope and Implications of the Inaccuracies in Yieh Phui's Cost Reporting Rendered its Determination Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law

In its *IDM*, Commerce stated that "the subset of the control numbers (CONNUMs) in the cost database that the petitioners have identified and alleged as problematic is very small." *IDM* at 5, P.R. 323.  The number of CONNUMs that Commerce referred to as "very small" was [   ] CONNUMs accounting for [      ] metric tons.  *Yieh Phui's Rebuttal Brief* at 22, P.R. 316, C.R. 218; *see also* IDM at 5, P.R. 323 (citing to *Yieh Phui's Rebuttal Brief* at 22). Commerce did not explain why this was insignificant.  The implication is that Yieh Phui's inaccurate cost reporting was acceptable as long as it only affected certain CONNUMs.  Commerce's assessment failed to consider the nature and full scope of the problem.

17

Yieh Phui allocated greater steel input quantities to all of the products that Consolidated Plaintiffs identified than were consistent with their physical characteristics. Since Yieh Phui allocated a fixed value of POI steel costs to its products by input quantity, this means that it necessarily allocated lower steel input costs to other products. In turn, the misallocation of costs distorted Commerce's dumping analysis. The alleged "very small" number of problematic CONNUMs identified by Consolidated Plaintiffs meant that additional CONNUMs were likewise in error.

In their case brief, Consolidated Plaintiffs made clear to Commerce that the misreporting they had identified impacted Yieh Phui's cost database as a whole. *See Pet. Case Brief* at 14, P.R. 314, C.R. 217. Moreover, Consolidated Plaintiffs' analysis of products based on Yieh Phui's verification exhibits was limited by the small amount of information actually examined by Commerce during verification. It is well-established that "{v}erification is a spot check and is not intended to be an exhaustive examination of a respondent's business." *Micron Tech. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997), *citing Monsanto Co. v. United States,* 698 F. Supp. 275, 281 (1988). Inaccuracies identified based on limited information examined and obtained at verification should be applied more broadly.

Consolidated Plaintiffs' additional analysis of Yieh Phui's products based on the elements of their CONNUMs also was limited by the fact that Yieh Phui did not report specific product information for each of its products, and Consolidated Plaintiffs could thus only look for examples of extreme inaccuracies. As Consolidated Plaintiffs noted in their case brief, the [

] they identified as inaccurate "constitute the more extreme examples of inaccurate information that Yieh Phui has reported." *Pet. Case Brief* at 13, P.R. 314, C.R. 217. Because the record only contained ranges of values for coating mass, width, and thickness, it was not possible

18

to identify all the products for which Yieh Phui had reported inaccurate information.  Other products may have specific values for these characteristics that fall within the ranges of the CONNUM codes but that are nonetheless inaccurate.

The presence of significant errors in the subset of CONNUMs that Consolidated Plaintiffs were able to analyze should have led Commerce to determine that there were significant errors in Yieh Phui's cost reporting.  The Federal Circuit has held that Commerce may reasonably determine that errors regarding certain information call into question the accuracy of other information.  *See Ad Hoc Shrimp Trade Action Comm. v. United States,* 802 F.3d 1339, 1356 (Fed. Cir. 2015).  Here, the record evidence of inaccuracies in Yieh Phui's reported cost information for [   ] CONNUMs based on the limited information available demonstrated problems with Yieh Phui's reporting more broadly. Because Commerce dismissed this evidence as pertaining to a "very small" subset of CONNUMs and failed to consider the full scope of the problem with Yieh Phui's cost data, its determination was not supported by substantial evidence and was contrary to law.

### C.    Commerce Erred in Relying on Objections to the Analysis of Yieh Phui's Reported Costs that Had No Bearing on the Analysis or the Inaccuracies in Yieh Phui's Costs.

Parroting arguments made by Yieh Phui, Commerce concluded that there were two elements in the Consolidated Plaintiffs' models that were incorrect.  *IDM* at 5, P.R. 323.  *First*, Commerce stated that the product thickness used in the models was overstated because the models used the thickness of final products, which included both the thickness of the metallic coating layer and the thickness of the metal substrate.  *Second*, Commerce took issue with the coating and painting weights used by Consolidated Plaintiffs in their analysis. Neither of these

objections has merit, and Commerce's blind reliance on them in reaching its final determination once again shows that its determination is not supported by substantial evidence.

Commerce's objection to the product thickness is baseless because it had no impact on the analysis. In their initial submission to Commerce on this issue, Consolidated Plaintiffs identified three of five products for which they had complete information as having significant volume differences depending on the volume calculation method. *See Comments on Yieh Phui's Cost Reporting* at Exhibit 5, P.R. 255, C.R. 206. Consolidated Plaintiffs showed that the volumes of these products as calculated based on their dimensions, including thickness, [

] volumes calculated based on reported substrate weight by [                    ]. *Id.* at 5, P.R. 255, C.R. 206. If the thickness value for the volume calculated using product dimensions had been reduced further to reflect the thickness attributable to coating or paint, the volume calculation based on these physical characteristics would necessarily also be reduced. This is simply arithmetic: a volume measure calculated by multiplying length, width, and thickness will necessarily be reduced if any of the three measures are reduced. This means that the [          ] between the dimension-based volume and the weight-based volume identified by Consolidated Plaintiffs would be [              ] if the thickness were reduced.

Similarly, the subsequent analysis used to demonstrate that the [ ] CONNUMs were inaccurate all showed that the volume of the product calculated by its dimensions (including thickness) was [          ] the volume calculated using substrate weight by at least [

]. *Pet. Case Brief* at Exhibit 5, P.R. 314, C.R. 217. Here too, if the thickness of any of these products were reduced to reflect the thickness attributable to coating or paint, then the difference between volume calculated based on substrate weight versus the volume calculated based on dimensions would be

20

[                    ] than the differences calculated by Consolidated Plaintiffs.  Again, this is simple math.  In sum, the volumes calculated by the measurements used by Consolidated Plaintiffs were conservative and supported their conclusion that Yieh Phui's cost reporting was not accurate.  Commerce's conclusion otherwise in accepting Yieh Phui's cost reporting lacks support in the record.

Commerce's second objection regarding purported inaccuracies in Consolidated Plaintiffs' models fares no better. In its *IDM*, Commerce stated that "the petitioners incorrectly assume that the theoretical metallic coating weight and theoretical paint coating weight used in their calculations are in actual values, but the factors were actually composed of a mix of theoretical and actual quantities, based on how these elements were reported to Commerce, as stipulated by Commerce's original questionnaires." *IDM* at 5, P.R. 323.  However, in conducting their analysis, Consolidated Plaintiffs relied on reported cost information that Commerce itself accepted as reasonable.

Yieh Phui allocated its total coating and painting costs using theoretical coating and painting weights. *Sec. B-D Response* at 130-133, P.R. 151, C.R. 43.  It did so using (1) product coating mass, width, and length for coatings and (2) paint thickness and density and product width and length for paint.  Thus, the calculations were based on actual product information, and the theoretical coating and painting weights were used by Yieh Phui to allocate actual cost amounts. *Sec. B-D Response* at Exhibit D-13, P.R. 153, C.R. 46.  As part of its reliance on Yieh Phui's reported costs, Commerce accepted these theoretical weights as reasonably accurate measures of actual coating and paint weights and, thus, of costs.  If they were not, then Commerce erred by accepting them.  The statute requires that the costs used in Commerce's

21

dumping analysis "reasonably reflect the costs associated with the production and sale of the merchandise." 19 U.S.C. § 1677b(f)(1)(A).

Consolidated Plaintiffs relied on Yieh Phui's reported theoretical coating weights for their analysis in two ways. First, for both their verification exhibit analysis and CONNUM dimension analysis, Consolidated Plaintiffs subtracted the theoretical coating and painting weights reported by Yieh Phui from the product weights to calculate the steel substrate weights. The substrate weights were used to calculate the weight-based volumes that Consolidated Plaintiffs compared to Yieh Phui's dimension-based volumes. This means, in fact, that the steel substrate volumes were conservative estimates of the weight-based product volumes, as they did not include any volume attributable to the coatings and paint. As shown in Consolidated Plaintiffs' verification exhibit analysis, for four of the five products for which the verification exhibits contained complete information, the volume computed using weight [         ] that computed using the product's dimensions. In Consolidated Plaintiffs' CONNUM dimension analysis, all of the products identified as incorrect were so identified because the weight-based volume [         ] the dimension-based volume. Because the weight-based volumes were conservative values, Consolidated Plaintiffs' analysis [

                    ].

The second use that Consolidated Plaintiffs made of Yieh Phui's theoretical coating weights was for its CONNUM dimension analysis. Yieh Phui calculated its theoretical coating weights using [                                        ]. *See, e.g., Verif. Exhibits* at PDF pages 217-218. Thus, Consolidated Plaintiffs were able to [


                                        ]. *See*

22

*Pet. Case Brief* at Exhibit 3, line number 8395, C.R. 217.  As a result, Consolidated Plaintiffs'

calculations did not rely on the accuracy of Yieh Phui's theoretical coating weights.  If, for

example, "A" (*i.e.*, theoretical weight) equals "B" times "C," then "C" can be determined by

dividing "A" by "B," regardless of whether "A" is an accurate measure of weight.

Either Commerce believed that Yieh Phui's reported theoretical weights are not accurate

measurements and therefore should have rejected the company's cost reporting on those grounds,

or it believed Yieh Phui's reported theoretical weights are accurate, in which case Commerce had

no basis to reject Consolidated Plaintiffs' analysis. Commerce cannot have it both ways.  One

way or the other, Commerce's determination is unsupported by substantial evidence.

### D.    Commerce Should Have Rejected Yieh Phui's Cost Information

In the data that it submitted to Commerce in the underlying investigation, Yieh Phui

incorrectly reported one or more of the characteristics for its products, and, therefore, the

CONNUMs reported for Yieh Phui's products were inaccurate.  *Comments on Yieh Phui's Cost*

*Reporting* at 1-7, P.R. 255, C.R. 206; *Pet. Case Brief* at 4-18, P.R. 314, C.R. 217.   Because Yieh

Phui improperly allocated the costs that it reported based on the improperly reported product

dimensions and other characteristics, the cost data that it reported to Commerce was necessarily

distorted and flawed. While Consolidated Plaintiffs identified errors for certain products based

on the information available in the record, these errors implicated the costs reported by Yieh Phui

for all of its products.

Under these circumstances, Commerce should have rejected Yieh Phui's cost data and

applied total AFA.  In a case where a respondent assigned the same production costs to different-

sized stainless steel bars, the Federal Circuit concluded that "{w}ithout cost data broken down

23

by product size, Commerce was unable to differentiate between different types of steel bar products and could not calculate an accurate constructed value for any of Mukand's products." *Mukand Ltd. v. United State*s, 767 F.3d 1300, 1307 (Fed. Cir. 2014).  The Federal Circuit therefore upheld Commerce's use of total AFA to determine a respondent's dumping margin.  *Id.* Just as the respondent in *Mukand* failed to provide Commerce with accurate product-specific costs, Yieh Phui failed to provide accurate product-specific costs by reporting incorrect product weights and dimensions.

In nevertheless accepting Yieh Phui's costs, Commerce ignored the issues Consolidated Plaintiffs raised, ignored the fact that the errors that were identified implicated all of Yieh Phui's cost reporting, and relied on facts that had no relevance to, or bearing on, the demonstrated errors in Yieh Phui's cost reporting.  Accordingly, Commerce's acceptance of Yieh Phui's reported costs was not supported by substantial evidence and was otherwise contrary to law.

## VI.    <u>CONCLUSION</u>

For all of these reasons, Consolidated Plaintiffs request that the Court remand this matter to Commerce with instructions to reconsider Yieh Phui's reporting of incorrect product characteristics and CONNUMs and the impact of those errors on Yieh Phui's cost reporting. Consolidated Plaintiffs further request that the Court instruct Commerce to reconsider the use of AFA based on the errors in Yieh Phui's reporting of its product characteristics, CONNUMs, and cost data.

/s/ Roger B. Schagrin
Roger B. Schagrin, Esq.
Jeffrey D. Gerrish, Esq.
William A. Fennell, Esq.
Alessandra A. Palazzolo, Esq.

**SCHAGRIN ASSOCIATES**
900 Seventh Street, NW
Washington, D.C. 20001
(202) 223-1700

*Counsel to Steel Dynamics, Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC*

/s/ Alan H. Price
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.
John Allen Riggins, Esq.

**WILEY REIN LLP**
2050 M Street, NW
Washington, D.C. 20036
(202) 719-7000

*Counsel to Nucor Corporation*

/s/ Thomas M. Beline
Thomas M. Beline, Esq.
Myles S. Getlan, Esq.
Nicole Brunda, Esq.
Angelica L. Townshend, *Director of Economic Analysis*
Matthew P. Berrigan, *Trade Accountant*

**CASSIDY LEVY KENT (USA) LLP**
2112 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 567-2300

*Counsel to United States Steel Corporation and Wheeling-Nippon Steel, Inc.*

25

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief contains 7529 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

Dated: July 21, 2026                                   /s/ William A. Fennell

                                                       William A. Fennell

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE GARY S. KATZMANN**

| | |
|---|---|
| YIEH PHUI ENTERPRISE CO., LTD., <br><br> Plaintiff, <br><br> STEEL DYNAMICS, INC. AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> Consolidated Plaintiffs, <br><br> and <br><br> NUCOR CORPORATION AND UNITED STATES STEEL CORPORATION, <br><br> Consolidated Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> STEEL DYNAMICS, INC.; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC; UNITED STATES STEEL CORPORATION; NUCOR CORPORATION; AND YIEH PHUI ENTERPRISE CO., LTD. <br><br> Consolidated Defendant-Intervenors. | Consol. Ct. No. 26-00746 |

## ORDER

Upon consideration of the Rule 56.2 Motion for Judgment on the Agency Record and the accompanying memorandum filed by Consolidated Plaintiffs Steel Dynamics, Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC, and the Plaintiff-Intervenors, Nucor Corporation and United States Steel Corporation, and upon all other papers filed and proceedings had herein, it is hereby

**ORDERED** that the motion of Consolidated Plaintiffs and Consolidated Plaintiff-Intervenors is granted; and it is further

**ORDERED** that the challenged decision of the U.S. Department of Commerce is remanded for reconsideration in accordance with this opinion.

_____
HON. GARY S. KATZMANN, JUDGE

Dated: _____, 2026
      New York, New York